# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ASHLEY BARD, *individually*
*and as the administrator for the*
*Estate of Zachary Ryan Goldson*,
  Plaintiff,

Case No. 1:15-cv-00643

Dlott, J.
Litkovitz, M.J.

vs.

Brown County, *et al*.,
  Defendants.

**ORDER**

  Plaintiff Ashley Bard brings this action against defendants Brown County, Ohio; Brown County Sheriff Dwayne Wenninger; Brown County Sheriff's Office employees Ryan Wedmore, Larry Meyer, Jason Huff, George Dunning, Zane Schadle, and Sarah McKinzie; and two John Doe/Jane Doe defendants. Plaintiff brings this action individually and on behalf of decedent Zachary Ryan Goldson, alleging civil rights violations arising out of Goldson's death on October 5, 2013, during his incarceration as a pretrial detainee at the Brown County Jail. The matter is before the Court on non-party Dennis Varnau's motion to quash a subpoena issued by defendants (Doc. 15) and defendants' memorandum in opposition to the motion (Doc. 18). The matter is also before the Court on supplemental briefs the parties filed following an informal telephone discovery conference held on April 10, 2017. (Docs. 26, 27, 28).

## I. Background

  Plaintiff filed this action on October 2, 2015 (Doc. 1) and an amended complaint on October 5, 2015. (Doc. 2). The amended complaint includes the following allegations: Defendants Schadle and Dunning reported that they found the decedent hanging in his cell at

approximately 2:58 a.m. on October 5, 2013. The decedent was pronounced dead shortly after an EMS team arrived at approximately 3:11 a.m. Upon its arrival, the EMS team found the decedent on the ground handcuffed and with a sheet tied around his neck. The Brown County coroner, Dr. Judith Varnau, was summoned and examined decedent at that time and on October 10, 2013. She confirmed the date of death but noted a pending investigation into the cause and manner of death. Between October 5 and November 30, 2013, Dr. Varnau investigated physical markings on decedent's body as well as measurements and the configuration of his cell. She concluded on November 30, 2013, that the cause of death was not suicide but homicide by strangulation and she signed a Supplementary Medical Certification stating this was the official cause of death. Based on these allegations, plaintiff brings claims under 42 U.S.C. § 1983 for excessive use of force, denial of medical care, failure to keep the decedent safe, and failure to preserve evidence. Plaintiff also brings state law claims for negligence, assault and battery, wrongful death, spoliation of evidence, and intentional infliction of emotional distress.

Defendants issued a subpoena to Dennis Varnau on March 9, 2017, under Fed. R. Civ. P. 45 directing him to produce the following materials: "Any and all documents, statements, reports, certificates, affidavits, investigations, interviews, recordings, files, records, evidence, correspondence, emails, memorandum, communications, [and] photographs, of whatever kind in whatever form by and between you and [plaintiff's counsel] John J. Helbling, Benjamin M. Maraan II, and/or Phillip F. Cameron re: [decedent]." (Doc. 15-1). Varnau moved to quash the subpoena on the grounds (1) the subpoena is unduly burdensome because it requests information that is either a public record or is already in defendants' possession, and (2) the requested information is protected as work product of plaintiff's attorneys and "as privileged communication with Varnau's personal counsel. . . ." (Doc. 15).

Varnau submitted his affidavit in support of the motion. (Doc. 15-2). Varnau alleges in the affidavit that he is a resident of Brown County who holds a degree in mechanical engineering and a juris doctor degree, and he is also a certified police officer and an auxiliary police officer for Sardinia, Ohio. (Doc. 15-2, Varnau Aff., ¶¶ 1, 3). His wife, Dr. Judith Varnau, served as the Brown County coroner at the time of Goldson's death and during the ensuing months. (*Id.*, ¶¶ 5, 8). During this time period, Varnau provided "secretarial support services" for his wife on a volunteer basis which consisted of assisting her with office paperwork and communications, including receipt and processing of invoices from neighboring county coroner officers for autopsies, receiving autopsy reports for cases originating in and around Brown County and placing them in decedents' files, and handling funeral home invoices for transportation of bodies. (*Id.*, ¶ 6). Varnau was "never involved at any death scene investigation relating to" Goldson. (*Id.*, ¶ 7). On or about June 10, 2015, plaintiff's counsel contacted Varnau and consulted him "for information and opinions regarding Mr. Goldson's death in anticipation of litigation" on behalf of Goldson's estate. (*Id.*, ¶¶ 4, 9). Plaintiff's counsel has regularly consulted with Varnau since June 10, 2015, regarding this litigation because of his "education, background, training and experience," and Varnau's "analysis and opinions" have been created at the request of plaintiff's counsel in anticipation of litigation or to assist counsel in prosecuting plaintiff's case. (*Id.*, ¶¶ 9-12). The information Varnau has used to assist counsel was "obtained through public records, through discovery, or . . . was provided to [Varnau by plaintiff's counsel] for [his] analysis and opinion on their behalf." (*Id.*, ¶ 10). Based on these allegations, Varnau contends that all of the materials defendants seek relate to information Varnau "provided to Plaintiff's counsel in their pre-suit investigation in anticipation of litigation" of this case and are clearly protected as work

product, and that additional information considered to prepare documents and recordings are "public record[s]" to which defendants have the same access as Dennis Varnau. (Doc. 15 at 9).

In response, defendants argue that Varnau's motion to quash should be denied because (1) plaintiff lacks standing to challenge the subpoena issued to Varnau on the ground of undue burden and the claim of undue burden is unfounded, and (2) the documents defendants seek are not entitled to protection as attorney work product. (Doc. 18). Defendants argue that Varnau has not submitted a privilege log as required to describe the content of the information Varnau seeks to withhold; Varnau has a conflict of interest arising from his involvement in other lawsuits with defendants that may be impacted by resolution of this case and which "overrides any potential attorney work product protection"; and Varnau is in actuality functioning as an expert witness so that the factual material he has considered must be disclosed. (*Id*. at 6). Defendants further contend that they have a substantial need for the subpoenaed materials, which they cannot obtain by other means. (*Id*. at 7).

The Court held an informal discovery conference on April 4, 2017, and a follow-up conference on April 10, 2017. (Docs. 19, 21). After the follow-up conference, the Court ordered the parties to submit briefs on the issues of (1) whether the work product doctrine applies to Varnau's conversations and materials, and (2) whether the sequestration of witnesses at the depositions in this case is warranted. (Doc. 22). In his brief, Varnau reiterates his position that plaintiff's counsel consulted him for "information and opinions" regarding Goldson's death and that since the time plaintiff filed this lawsuit, he has regularly worked with plaintiff's counsel "to analyze information and formulate opinions based on his education, training and experience in

order to assist them in support of the claims" in this case. (Doc. 24 at 4-5, citing Doc. 24-3, Varnau Aff., ¶¶ 9, 11, 12). Varnau alleges that "everything arising out of [his] assistance to Plaintiff's counsel after June 10, 2015" constitutes "opinion work product" that reflects "the mental impressions of an attorney." (*Id*. at 10). Varnau also alleges that "the information that [he considered] in preparing additional documents, recordings, both audio and video and opinions for Plaintiff's counsel is either public record that Defendant already has in its possession or arises out of documents provided by Defendants to Plaintiffs in discovery and used by Mr. Varnau in assisting Plaintiff's counsel in the current litigation." (*Id*.).

Defendants argue in response that the work product doctrine does not apply to Varnau's conversations and materials due to Varnau's alleged conflict of interest, plaintiff's failure to submit a privilege log, and defendants' demonstrated need for the information. (Doc. 26 at 6). Defendants allege that Varnau has a conflict of interest that arises from his involvement in two defamation lawsuits filed by defendants and a third case where the Brown County Common Pleas Court issued an injunction that enjoins the coroner's office from "any activity whatsoever concerning the mode, manner and cause of death of Zachary Goldson." (*Id*. at 7, citing *Dunning et al v. Varnau, et al.*, No. 1:14-cv-00932 (S.D. Ohio 2014); *Dunning et al. v. Varnau et al.,* No. CV 20170146 (Brown Cnty. C.P. Court)[1]; *Dunning et al. v. Varnau,* No. CV 20150001 (Brown Cnty. C.P. Court, Sept. 8, 2016). Defendants allege that Varnau's conflict of interest precludes him from serving as an expert witness in this case and claiming work product protection for his materials; however, plaintiff has tried to sidestep this barrier by designating Varnau as a "consultant" when in fact he is a "constructive expert witness" admittedly retained by plaintiff

---

[1] Varnau has submitted a copy of an April 7, 2017 Order entered in Case No. CVH20170146, which denies a motion for preliminary injunction filed by defendants to enjoin Varnau and his wife from publishing certain information concerning defendants' activities, specifically a video titled "Zachary Goldson DID NOT hang himself in Jail Cell 15-October 5, 2013." (Doc. 28, Exh. 2).

5

"to analyze evidence and formulate opinions." (*Id.* at 7-8, citing *Ross v. Am. Red Cross*, No. 2:09-CV-905, 2012 WL 2090511, at *1 (S.D. Ohio Jan. 11, 2012), *aff'd*, 567 F. App'x 296 (6th Cir. 2014); *Sells v. Wamser*, 158 F.R.D. 390, 393 (S.D. Ohio 1994); *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003), *aff'd,* 99 F. Appx. 274 (2d Cir. 2004)). Defendants also assert that it was apparent at the time plaintiff's counsel retained Varnau that he was actually a fact witness, so there is no reasonable expectation his communications with counsel would be protected under the work product doctrine. (*Id.* at 8, citing *Evercare Co. v. 3M Co.*, No. 1:08 MC 42 (Doc. 13 - July 10, 2008 Order) (N.D. Ohio) (McHargh, M.J.)). Defendants allege that plaintiff's decision to retain Varnau as a "non-testifying trial consultant . . . is highly suspect" and plaintiff must bear the consequences of counsel's ill-advised decision. (*Id.*).

Defendants further allege that the work product doctrine does not shield Varnau's communications and materials because Varnau has not submitted a privilege log, without which it is impossible to determine whether the withheld information or materials are "facts" that must be disclosed or "opinions" that may be entitled to protection. (*Id.* at 8-9). Defendants also contend they are entitled to the subpoenaed information because they can demonstrate both a substantial need for it and an inability to obtain the equivalent information from another source without undue hardship. (*Id.* at 9-10).

Defendants also argue that Varnau's "conflict of interest, improper conduct, and lack of credibility" require his "sequestration," i.e., limiting Varnau's "participation in this case to providing sworn testimony." (*Id.* at 1).

In reply, Varnau disputes the premises defendants rely on in support of their motion to quash. (Doc. 28). Varnau denies he is a fact witness, and he also denies he is an expert witness. (*Id.* at 6). Further, Varnau alleges that the information that came out of the investigation he

6

conducted for plaintiff's counsel has since been provided to defendants so that there is no need for a privilege log, and defendants can obtain the information they seek through other means because it either originated from them or is a public record. (*Id*.). Varnau also seeks to distinguish the *Evercare* case by alleging that all information and materials defendants seek relate directly to Varnau's work with plaintiff's counsel; Varnau has satisfied his burden to show those matters go directly to plaintiff's counsel's pre-trial investigation or prosecution of this lawsuit; there is no need for a privilege log here because all of the subpoenaed materials have been produced to defendants, they are already in defendants' possession, or they are readily accessible public records; and plaintiff has not retained Varnau as a witness and Varnau has not generated any reports for plaintiff's counsel. (Doc. 28 at 6-11).

Varnau challenges defendants' sequestration request on the ground he has done nothing that would require him to be sequestered. Varnau alleges that an affidavit completed by Tara Downing in an attempt to support defendants' sequestration request is not truthful. (*Id*. at 13). Varnau also denies that he has a conflict of interest stemming from his association with the Brown County coroner's office and that he has been enjoined from engaging in any activity with respect to Goldson's death. (*Id*. at 13-14). Varnau further contends that the authorities on which defendants rely to support their sequestration request apply only to depositions and trials and do not permit broader restrictions. (*Id*. at 12, citing cases).

## II. Motion to quash

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that [] requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(iii). The scope of discovery under a subpoena is the same as the scope of discovery under Fed. R. Civ. P. 26. *Hendricks v. Total*

7

*Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citing *Barrington v. Mortgage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)). Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," taking into consideration six factors specified in the Rule. Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P. 26(b)(5)(A) provides that a party who withholds information that is otherwise discoverable "by claiming that the information is privileged or subject to protection as trial-preparation material" must:

> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). The Local Rules of this Court provide:

> Any privilege log shall refer to the specific request to which each assertion of privilege pertains. A privilege log shall list documents withheld in chronological order, beginning with the oldest document for which a privilege is claimed.

S.D. Ohio Civ. R. 26.1(a). A privilege log must contain sufficient detail to enable the opposing party and the court to assess whether each element of the asserted privilege or protection is satisfied. *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010)**.** *See also In re Universal Services Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005).

Fed. R. Civ. P. 26(b)(3) governs work product claims. With certain exceptions, Rule 26(b)(3) protects from disclosure all: (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative (including

the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[2] Fed. R. Civ. P. 26(b)(3)(A). Under the Federal Rules, the work product protection under Rule 26(b)(3) is not limited to attorneys but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation. *Id. See Eversole v. Butler County Sheriff's Office*, No. 1:99-cv-789, 2001 WL 1842461, at *2 (S.D. Ohio Aug. 7, 2001) ("Rule 26(b)(3) is not limited solely to attorneys" and "documents and things prepared by the party or his agent fall within the work product rule.") (citing 8 Wright & Miller, Federal Practice & Procedure, § 2024). Rule 26(b)(3) excludes from work product protection "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Rule 26 advisory committee's note (1970).

"Opinion" work product is entitled to near absolute protection against disclosure, while "fact" work product may be discoverable upon a showing by a party that it has a substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain substantially equivalent materials by other means. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).

Two factors are material to whether a document is protected by the work product doctrine

---

[2] Rule 26(b)(3) provides:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26.

because it was "in anticipation of litigation" or for trial: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). *See also Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-cv-1081, 2013 WL 607969, at *9 (S.D. Ohio Feb. 19, 2013) (Report and Recommendation), *affirmed*, 2014 WL 5857994 (S.D. Ohio Nov. 12, 2014) (it is not sufficient to state that a communication generally relates to litigation to warrant work product protection; the communication must have been "prepared in anticipation of litigation or for trial."). The party resisting disclosure bears the burden of showing that the material was "prepared in anticipation of litigation or for trial." *Toledo Edison Co. & Cleveland Electric Illuminating Co. v. G A Technologies, Inc.*, 847 F.2d 335, 339 (6th Cir. 1988). A party may satisfy this burden "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories," and the showing "can be opposed or controverted in the same manner." *Id*. "Where an 'undisputed affidavit . . . is specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial,' then the party claiming work product protection has met its burden." *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison Co.*, 847 F.2d at 341). However, courts will reject claims for work product protection "where the 'only basis' for the claim is an affidavit containing 'conclusory statement[s].'" *Id.* (quoting *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn.*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002)). Finally, "[i]f a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection[.]" *In re Professionals Direct Ins. Co.*, 578 F.3d at 439

(quoting *Roxworthy*, 457 F.3d at 598-99). However, the party seeking protection bears the burden of showing that "anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id*. (quoting *Roxworthy*, 457 F.3d at 595) (stating that such documents do not lose protection under the work product doctrine "unless the documents 'would have been created in essentially similar form irrespective of the litigation'") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992)).

As an initial matter, defendants have not shown that Varnau lacks standing to challenge the subpoena issued to him, which he moves to quash on grounds of both undue burden and work product protection. The authorities defendants cite do not support their position that Varnau lacks standing to move to quash the subpoena on the ground of undue burden. (*See* Doc. 18 at 1, citing *Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2013 WL 3322221, at *4 (S.D. Ohio July 1, 2013); *Donahoo v. Ohio Dept. of Youth Services*, 211 F.R.D. 303, 306 (N.D. Ohio 2002)). The courts in these cases concluded that the entity to whom the subpoena is directed is the only entity with standing to challenge the subpoena. *Riding Films, Inc.,* 2013 WL 3322221, at *6; *Donahoo*, 211 F.R.D. at 306. Defendants' subpoena was directed to Varnau, and he is the individual with standing to challenge the subpoena.

While Varnau has standing, he has not shown that it would be unduly burdensome to comply with the subpoena defendants have issued to him. Varnau alleges that the subpoena imposes an undue burden only because it requests information that is either a public record or is already in defendants' possession. (Doc. 15 at 1, 9). It is impossible to evaluate Varnau's contention because he has not identified the information or materials that are responsive to defendants' subpoena, and he has not disclosed which of those documents have already been provided to defendants or are otherwise in their possession. Varnau's vague allegations, which

11

are lacking in any such specifics, are insufficient to support a finding that the subpoena issued to him is unduly burdensome.

In addition, the Court finds that Varnau has not carried his burden to show that the information defendants seek through the Rule 45 subpoena is protected under the work product doctrine. Varnau generally states that "all" of the information defendants seek is work product simply because the information was gathered in connection with counsel's pre-suit investigation and during the course of the litigation. (Doc. 24 at 12). However, Varnau has not presented proof such as "affidavits made on personal knowledge, depositions, or answers to interrogatories" that are sufficiently "specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial. . . ." *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison Co.*, 847 F.2d at 341). Instead, the "'only basis' for the claim [of protection under the work-product doctrine] is an affidavit containing 'conclusory statement[s]'," which does not suffice to establish the claim. *Id.* (quoting *Guardsmark, Inc.*, 206 F.R.D. at 210). Moreover, it appears that at least some of the information for which Varnau claims work product protection is factual information. It is highly likely that Varnau will be a fact witness in this case given his work as a volunteer assistant to his wife, Dr. Judith Varnau, at the time of Goldson's death and during the ensuing inquiry into the cause of death. Relevant factual information Varnau may have learned while working as an unpaid assistant to the Brown County coroner and then shared with counsel would not be entitled to work product protection.

It is possible that certain materials defendants seek from Varnau are work product and are entitled to protection from disclosure. However, it is impossible to make this determination based on Varnau's submissions, which do not describe the information and materials in question with any specificity. Accordingly, the Court will reserve ruling on the motion to quash pending

12

(1) Varnau's submission to defendants and the Court of a privilege log that identifies the subpoenaed materials for which Varnau claims work product protection and that provides the required information, and (2) submission of the documents to the undersigned for *in camera* review. The privilege log must contain sufficient detail to enable defendants and the Court to assess whether each element of the work product doctrine is satisfied. *See Cooey*, 269 F.R.D. at 649; *In re Universal Services Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 673. If Varnau fails to establish that any information or material is entitled to work product protection, he will be required to produce it to defendants pursuant to the Rule 45 subpoena.

## III. Sequestration request

Defendants argue that Varnau's "conflict of interest, improper conduct, and lack of credibility demands [sic] his sequestration in the underlying litigation." (Doc. 26 at 1). Defendants allege that Varnau's conflict of interest arises from (1) the injunction issued by the Brown County Common Pleas Court that purportedly enjoined Varnau from engaging in any activity related to the mode, manner and cause of Goldson's death, and (2) a vested interest Varnau has in the outcome of this case given that he and his wife are named as defendants in two defamation lawsuits that may be impacted by the resolution of this case. (*Id*. at 7). Defendants note that courts have the authority under Fed. R. Evid. 615 to sequester witnesses at trial to prevent them from hearing other witnesses' testimony and that the Court may limit attendance at depositions "for good cause" under Fed. R. Civ. P. 26(c)(1)(E). (*Id*. at 4, citing cases). Defendants allege that sequestration is particularly warranted here because Varnau has been involved as both a consultant and fact witness so that his credibility is critically important; Varnau's testimony in the case of *Dunning, et al. v. Varnau*, Brown County C.P. Court No. 2015-0001 has purportedly been called into question by deposition testimony provided by

Goldson's mother; Varnau's assertion that his role at the coroner's office was limited to administrative tasks is of dubious validity; and Varnau's tasks of analyzing evidence and formulating opinions for plaintiff's counsel suggest he is serving as an expert witness but has never been disclosed as one. (*Id*. at 4-5). Varnau argues that defendants have not cited any authority that shows the Court can preclude him from speaking with plaintiff's counsel and assisting with the investigation of plaintiff's case. (Doc. 28 at 12-13).

The Court will grant defendants' request to sequester Varnau to the extent defendants seek to preclude him from attending the other depositions in this case. The Court has the authority to exclude witnesses from depositions pursuant to Rule 26(c), which provides in part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (E) designating the persons who may be present while the discovery is conducted[.]" *Stone v. City of Grand Junction, Tenn.*, No. 1:10-CV-01088, 2010 WL 4569073, at *1 (W.D. Tenn. Nov. 4, 2010) (citing Fed. R. Civ. P. 26(c)(1)(E)); *In re Air Crash at Lexington, Ky.*, *August 27, 2006*, No. 5:06-CV-316, 2008 WL 170510, at *2 (E.D. Ky. Jan. 17, 2008) (same). There is good cause for restricting Varnau from attending the depositions of other parties and witnesses in this matter. There is no question that Varnau has a vested interest in the testimony provided in this case and in the outcome of this lawsuit due to his involvement in other lawsuits filed in connection with Goldson's death. While Varnau's interest may not be enough standing alone to constitute "good cause" for sequestering him from the depositions, the standard is met when this fact is considered together with the other unusual circumstances of this case. It is apparent from the filings that the parties, counsel, and Varnau have an extensive and contentious history of interactions, many of which center around Goldson's death and the finding by Brown County coroner Dr. Varnau,

14

Varnau's wife, that the cause of death was homicide by strangulation.  Although Varnau represents he has been retained by plaintiff's counsel as an investigator to gather information and provide analysis and opinions, Varnau will almost certainly be called as a fact witness in this case based on his access to relevant information while serving as a volunteer assistant to the Brown County coroner.  Varnau's interest in the outcome of this case, coupled with the history of the parties' legal filings and Varnau's dual role as an investigator and fact witness, constitute good cause to exclude Varnau from the depositions in this matter.

The Court will deny defendants' request for sequestration insofar as they seek to go beyond excluding Varnau from the depositions in this matter and limit his participation to providing sworn testimony at his deposition and at trial.  Defendants have not produced evidence that shows Varnau himself has been enjoined by any court from assisting plaintiff's counsel in this litigation.  Moreover, the cases defendants cite do not indicate that the Court has the authority to restrict Varnau from participating in the litigation in any capacity other than as a witness.  *See United States v. Rugiero*, 20 F.3d 1387, 1392 (6th Cir. 1994) (citing *United States v. Gibson*, 675 F.2d 825, 835 (6th Cir. 1982) (addressing sequestration of witnesses in the courtroom to prevent coaching or influencing another witness' testimony); *Geders v. United States*, 425 U.S. 80, 87 (1976) (a judge has power to sequester witnesses during course of trial); *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 629 (6th Cir. 1978) (issue was whether trial judge erred in excluding expert from the courtroom)).  Accordingly, the Court will deny defendants' request to limit Varnau's participation to the extent they request anything beyond sequestration at the depositions.

**IT IS THEREFORE ORDERED THAT:**

(1) The Court reserves ruling on nonparty Dennis Varnau's motion to quash (Doc. 15) pending:

- Submission to defendants and the Court of a privilege log that identifies the materials requested in the subpoena for which Varnau claims work product protection and provides the required information for those materials **within 20 days** of the date of this Order; and,

- Submission of the documents identified in the privilege log to the undersigned for *in camera* review **within 20 days** of the date of this Order.

(2) Defendants' request for sequestration is **GRANTED** only insofar as it relates to depositions in this matter. Nonparty Dennis Varnau shall not attend the deposition of any other witness or any party in this lawsuit.

Date: <u>May 26, 2017</u>　　　　　　　　　　　　　　　　<u>Karen L. Litkovitz</u>
　　　　　　　　　　　　　　　　　　　　　　　　　　Karen L. Litkovitz
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge