# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ASHLEY BARD, *individually*              Case No. 1:15-cv-00643
*and as the administrator for the*
*Estate of Zachary Ryan Goldson,*        Dlott, J.
    Plaintiff,                          Litkovitz, M.J.

    vs.

Brown County, *et al*.,                  **ORDER**
    Defendants.


Plaintiff Ashley Bard brings this action against defendants Brown County, Ohio; Brown County Sheriff Dwayne Wenninger; Brown County Sheriff's Office employees Ryan Wedmore, Larry Meyer, Jason Huff, George Dunning, Zane Schadle, and Sarah McKinzie; and two John Doe/Jane Doe defendants. Plaintiff brings this action individually and on behalf of decedent Zachary Ryan Goldson, alleging civil rights violations arising out of Goldson's death on October 5, 2013, during his incarceration as a pretrial detainee at the Brown County Jail.

On March 9, 2017, defendants issued a subpoena under Fed. R. Civ. P. 45 to non-party Dennis Varnau directing him to produce the following materials: "Any and all documents, statements, reports, certificates, affidavits, investigations, interviews, recordings, files, records, evidence, correspondence, emails, memorandum, communications, [and] photographs, of whatever kind in whatever form by and between you and [plaintiff's counsel] John J. Helbling, Benjamin M. Maraan II, and/or Phillip F. Cameron re: [decedent]." (Doc. 15-1). Varnau moved to quash the subpoena on the grounds (1) the subpoena is unduly burdensome because it requests information that is either a public record or is already in defendants' possession, and (2) the

requested information is protected as work product of plaintiff's attorneys and "as privileged communication with Varnau's personal counsel. . . ." (Doc. 15).

By Order dated May 26, 2017, the Court determined that Varnau failed to show it would be unduly burdensome to comply with the subpoena; however, the Court reserved ruling on Varnau's motion to quash pending plaintiff's (1) submission to defendants and the Court of a privilege log that identifies the materials requested in the subpoena for which Varnau claims work product protection and provides the required information for those materials; and (2) submission of the documents identified in the privilege log to the undersigned for *in camera* review.

Plaintiff has now submitted a privilege log and the documents for *in camera* review and defendants have filed a response to the privilege log (Doc. 36). This matter is therefore ripe for review. The Court has considered Varnau's motion to quash the subpoena issued by defendants (Doc. 15) and defendants' memorandum in opposition to the motion (Doc. 18); the parties' supplemental briefs (Docs. 26, 27, 28); and plaintiff's privilege log and documents submitted for *in camera* review and defendants' response to the privilege log (Doc. 36). For the reasons that follow, the Court grants Varnau's motion to quash the subpoena.

The Court's Order of May 26, 2017 sets forth the background of this case, its procedural posture, and the arguments of the parties which are incorporated herein by reference. (Doc. 22).

Plaintiff requests that the Court issue an order quashing the subpoena to Varnau because the subpoena "seeks information related to plaintiff's counsels' pre-suit investigation in anticipation of litigation as well as their ongoing legal strategy and subsequent prosecution of the lawsuit relating to the death of Zachary Goldson and is protected by the work product doctrine." (Doc. 15 at 9). Defendants oppose the motion to quash, arguing that the work product doctrine

2

does not apply to Varnau's conversations and materials due to Varnau's alleged conflict of interest and defendants' demonstrated need for the information.  (Doc. 26 at 6).[1]

An attorney's work product is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . ." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  Work product is protected to ensure that a lawyer can "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to allow the attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 510-11. Fed. R. Civ. P. 26(b)(3) governs work product claims.  Rule 26(b)(3) provides:

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26.  The work product protection of Rule 26(b)(3) is not limited to attorneys but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation. *Id.  See Eversole v. Butler County Sheriff's Office*, No. 1:99-cv-789, 2001 WL 1842461, at *2 (S.D. Ohio Aug. 7, 2001) ("Rule 26(b)(3) is not limited solely to attorneys" and "documents and things prepared by the party or his agent fall within the work product rule.") (citing 8 Wright & Miller,

---

[1] Initially, defendants also opposed the motion based on plaintiff's failure to submit a privilege log.  (Doc. 26 at 6). The Court's Order directing plaintiff to submit a privilege log moots this argument.

Federal Practice & Procedure, § 2024). In determining whether a document is protected by the work product doctrine because it was "in anticipation of litigation" or for trial the Court must consider: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). *See also Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-cv-1081, 2013 WL 607969, at *9 (S.D. Ohio Feb. 19, 2013) (Report and Recommendation), *affirmed*, 2014 WL 5857994 (S.D. Ohio Nov. 12, 2014) (it is not sufficient to state that a communication generally relates to litigation to warrant work product protection; the communication must have been "prepared in anticipation of litigation or for trial."). The Court must determine the "driving force behind the preparation of each requested document" in assessing whether the document is protected as work product. *Roxworthy*, 457 F.3d at 595.

Documents that are protected as work product may still be discoverable if the requesting party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). While "fact" work product may be discoverable upon such a showing, "opinion" work product is entitled to near absolute protection against disclosure. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). "[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (citations omitted)). Rule 26(b)(3)(B) requires the Court to "protect against disclosure of the mental impressions,

4

conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

As an initial matter, defendants contend the privilege log does not provide enough specificity to prove the communications in question are protected. (Doc. 36 at 1). The Court disagrees. The privilege log contains sufficient detail to enable defendants and the Court to assess whether the work product doctrine applies to the documents sought by defendants. *See Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010).

Next, defendants contend that Varnau is a non-party and protection under Rule 26(b)(3) is limited to parties to the underlying litigation. (Doc. 36 at 5). Contrary to defendants' argument, the protection afforded by the work product doctrine is not so limited.[2] While the work product doctrine was initially intended to protect the work of an attorney from encroachment by opposing counsel, its protection has been extended to the work of both lawyers and nonlawyers. *See, e.g.,* Adv. Comm. Notes to 1970 Amendment to Rule 26(b)(3) ("[T]he weight of authority affords protection of the preparatory work of both lawyers and nonlawyers" and subdivision (b)(3) "protect[s] against disclosure the mental impressions, conclusions, opinions, or legal theories concerning the litigation of an attorney or other representative of a party."). Under Rule 26(b)(3), all documents and tangible things prepared by or for the attorney of the party from whom discovery is sought qualify as work product, so long as they were prepared in anticipation of litigation or preparation for trial. The Supreme Court has reasoned:

---

[2] Defendants cite *Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 93-3084, 1994 WL 58999 (6th Cir. 1994), for the proposition that "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected" by the work product doctrine. *Id.* at *4 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 201-2). *Arkwright* involved related, but separate lawsuits in different jurisdictions and the party from whom discovery was sought was not a party nor a representative of any party to the litigation from which the subpoena duces tecum arose. 1994 WL 58999 at *4. Here, in contrast, the subpoena to Varnau arises from the instant action in which he is an agent or representative of the plaintiff in this lawsuit. Therefore, *Arkwright* is distinguishable from the instant case.

> [T]he [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 239 (1975). *See also In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) ("The Supreme Court has held that the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation.") (citing *Nobles*, 422 U.S. at 239); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 666 (3d Cir. 2003) (noting that "the work product doctrine extends to materials compiled by a non-attorney, who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation") (internal quotation marks and citation omitted); *United States v. Adlman*, 134 F.3d 1194 (2nd Cir. 1998) (finding work product protection for documents reflecting mental impressions of agent generated in anticipation of litigation for attorney on behalf of client). Thus, the fact that Varnau is not a party to the lawsuit does not preclude application of the work product doctrine to the documents sought by defendants.

In this case, Varnau serves as a litigation consultant for plaintiff. Plaintiff's counsel contacted Varnau on or about June 10, 2015, and consulted him "for information and opinions regarding Mr. Goldson's death in anticipation of litigation" on behalf of Goldson's estate. (Doc. 24-3, Varnau Aff., ¶¶ 4, 9). Varnau states that plaintiff's counsel has regularly consulted with him since June 10, 2015, regarding this litigation because of his "education, background, training and experience,"[3] and Varnau's "analysis and opinions" have been created at the request of plaintiff's counsel in anticipation of litigation or to assist counsel in prosecuting plaintiff's case. (*Id.*, ¶¶ 9-12).

---

[3] Varnau's affidavit states that he holds a degree in mechanical engineering and a juris doctor degree, and he is also a certified police officer and an auxiliary police officer for Sardinia, Ohio. (Doc. 15-2, Varnau Aff., ¶¶ 1, 3).

The documents submitted to the Court for *in camera* review consist of emails between Varnau and plaintiff's counsel, lists of discovery items produced by defendants and shared with Varnau, and telephone logs that include text messages between Varnau and plaintiff's counsel.

Emails 1 through 26 were created prior to the filing of the lawsuit on October 2, 2015.  It is evident from the content, context and timing of these emails that the driving force behind their creation was plaintiff's lawsuit.  The emails discuss both counsel and Varnau's investigations, engineering principles, legal theories, assessments of potential claims, and potential expert witnesses for plaintiff's anticipated lawsuit against defendants, as well as communications about the drafting of the complaint in the case.  The Court is persuaded from the content and context of these documents that their primary focus is the provision of legal and investigatory assistance and analysis for the pending lawsuit by Varnau, a litigation consultant.  As the driving force behind their creation is the lawsuit, the Court finds the emails were created in anticipation of litigation by or for plaintiff's attorney or her agent, Varnau, and qualify as protected work product.  *In re Prof'ls Direct Ins. Co*., 578 F.3d at 439.  Emails 27 through 165 were created after the complaint was filed by plaintiff and contain similar discussions between counsel for plaintiff and Varnau on strategy, legal and investigatory research, and opinions on legal theories and potential expert witnesses.   These email documents are likewise protected as work product.

Documents 166 to 168 are lists of documents contained on discs which were provided by defendants in response to plaintiff's discovery requests and given to Varnau for review.  These lists of documents qualify as the work product of counsel for plaintiff as they reveal the documents and discovery counsel determined were relevant to the claims and should be shared with Varnau.  As the production of these lists of documents could reveal the mental impressions of counsel, the Court finds Documents 166, 167, and 168 are protected as opinion work product.

Finally, Documents 169 to 175 are logs of text messages/phone calls between Varnau and counsel for plaintiff. Again, the text messages include discussions between Varnau and plaintiff's counsel regarding legal strategy and reflect their opinions and conclusions concerning the instant litigation. The disclosure of these text message/phone logs could reveal the mental impressions of both counsel and Varnau about this litigation. *See* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials [documents and tangible things], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Therefore, Documents 169 to 175 are protected work product.

Defendants contend that Varnau has a conflict of interest that overrides any potential work product protection in this matter. They argue that "[b]ecause Mr. Varnau must be sequestered in the underlying litigation to provide only his sworn testimony, the work product doctrine is unavailable to him." (Doc. 36 at 4). The undersigned has previously denied defendants' request for sequestration beyond excluding Varnau from the depositions in this matter. (Doc. 30 at 15). Thus, the Court declines to order production of the documents on this basis.[4]

Defendants also argue that "Varnau was retained as a litigation consultant while it was known that he would likely have to testify as a fact witness; therefore, the communications between him and plaintiff's counsel are not confidential." (Doc. 36 at 4, citing *Evercare Co. v. 3M Co.*, No. 1:08 MC 42, 2008 U.S. Dist. LEXIS 117037 (N.D. Ohio July 10, 2008)). *Evercare* is factually distinguishable from the instant case because it involved the plaintiff's selective disclosure of some documents from its technical consultant, including a product testing report

---

[4] The Court notes that defendants' objections to the Order regarding sequestration were overruled by District Judge Susan J. Dlott on July 20, 2017. (Doc. 39).

that was akin to an expert report, and the plaintiff's withholding of other such documents as attorney work product. In *Evercare*, the plaintiff intentionally produced a privileged document to the defendant – a report prepared by the plaintiff's non-testifying technical consultant that revealed the results of product testing that supported the plaintiff's claims in the case. The plaintiff expressly reserved the right to rely on that report at trial but did not name its technical consultant as an expert witness. The court determined that because Fed. R. Civ. P. 26(a)(2)(A) requires parties to identify any witness that may be used at trial and to exchange expert reports for all testifying experts, the plaintiff would be required to produce all documents considered by the consultant during the relevant time period if the plaintiff chose to employ its "technical consultant" as a testifying expert at trial.

The plaintiff in *Evercare* also acknowledged that its technical consultant was a testifying fact witness with knowledge of specific testing done on the plaintiff's behalf over time. The defendant claimed that the plaintiff's communications with its technical consultant, a non-party fact witness, waived its ability to claim work product immunity as to those communications. The defendant argued that the plaintiff could have no reasonable expectation of confidentiality as to its communications with the technical consultant, when it knew that the technical consultant's testimony would be used by one or more of the parties at trial. The court considered the plaintiff's claim of work product protection for all of the materials arising out of its trial consulting arrangement to be "dubious." 2008 U.S. Dist. LEXIS 117037 at *23. The court found that because the plaintiff expressly reserved the right to rely on the testing report at trial to support its claims, its use of that report at trial would render the technical consultant a "testifying expert" under the Rules without the concomitant obligation to disclose prior to trial all of the data and information considered by the technical consultant. The court concluded that the only

9

way to vindicate the spirit of Rule 26's expert witness provision was to treat the technical

consultant as a testifying expert, thereby trumping any claim of work product protection.[5]

 In the instant case, there is no evidence some documents or communications between

Varnau and plaintiff's lawyers were selectively disclosed while others were withheld as work

product.  In addition, all of the documents on plaintiff's privilege log that defendants seek relate

directly to Varnau's work with plaintiff's counsel.  And while defendants contend that Varnau

has been "characterized as an expert witness throughout the course of the underlying litigation"

(Doc. 36 at 4), they have not presented any evidence to substantiate this claim.  *Evercare* does

not stand for the proposition that a fact witness who also serves as a litigation consultant waives

any protection under the work product doctrine.

 Rather, where a fact witness is retained as a litigation consultant, Rule 26(b)(3)'s work

product protection applies to the opinions and documents created in his capacity as a litigation

consultant.  The case of *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 519

(N.D. Ill. 1990) is instructive.  In *Barrett*, the plaintiff hired one of its former employees as a

consultant for the case.  That former employee became a key fact witness.  The court prohibited

the defendant from attempting to discover the substance of prior conversations between the

consultant and the plaintiff's counsel as protected work product.  The court found that while any

underlying facts the plaintiff's attorneys communicated to the witness must be disclosed, "the

specific questions that [the plaintiff's] counsel has asked him, or even the area of the case to

which counsel directed the majority of the questions" were not discoverable "as tending to

disclose the mental impressions, conclusions, opinions, or legal theories of [plaintiff's]

---

[5] The court found that "[i]n the alternative, [the plaintiff]'s dissemination of otherwise privileged information to [the consultant] and subsequent selective disclosure to [the defendant], under the circumstances of this case, waives any entitlement to resist the motion by claiming work product privilege."  2008 U.S. Dist. LEXIS 117037 at *23.  As discussed above, there has been no selective disclosure of any documents authored by Varnau in this matter.

attorneys." 129 F.R.D. at 519 (citation omitted). The court further determined that because the witness was a consultant to the plaintiff, the defendant "may not, under Fed. R. Civ. P. 26(b)(3), subject to Fed. R. Civ. P. 26(b)(4), elicit answers which would disclose whatever mental impressions, conclusions, opinions, or legal theories [the consultant] may have." *Id.*

Like the consultant in *Barrett*, Varnau has been retained as a litigation consultant to plaintiff's lawyers. Thus, the communications and documents exchanged between counsel and Varnau which would disclose their mental impressions, conclusions, opinions, or legal theories are protected as work product. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183–84 (2d Cir. 2007) ("opinion work product reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and is entitled to greater protection than fact work product") (internal quotation marks omitted). The Court has reviewed, *in camera,* each of the communications at issue here and finds them to be in the nature of opinion work-product as their disclosure would tend to reveal the thought processes and legal strategies of counsel and Varnau. Therefore, the communications remain protected by the work-product privilege.

Finally, defendants argue that even if work product protects the documents in this case, they can prove a "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means" under Rule 26(b)(3)(A)(ii). (Doc. 36 at 6). The emails, document lists, and text message/phone logs sought by defendants contain the mental impressions, conclusions, opinions and legal theories of plaintiff's attorneys and the litigation consultant working with them. Such materials constitute classic "opinion" work product, which is protected from disclosure even with a showing of a "substantial need." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 294. "[A]bsent

11

waiver, a party may not obtain the "opinion" work product of his adversary. . . ." *Id.* As there

has been no showing of a waiver in this case, defendants may not obtain the documents listed on

plaintiff's privilege log.  To the extent the emails and other documents reference particular

evidence or factual matters (e.g., autopsy photos, BCI materials, interviews), it appears this

information consists of matters of public record, discovery materials already provided by

defendants, or information that defendants can obtain without undue hardship through the normal

discovery process.  Therefore, the Court declines to order the disclosure of the documents set

forth in plaintiff's privilege log under Rule 26(b)(3)(A)(ii).

   While the Court finds the documents contained on plaintiff's privilege log are protected

as work product and need not be disclosed to defendants, the Court wants to make clear that

insofar as defendants seek to obtain relevant factual information from any person, including

Varnau, the work product doctrine does not prevent the discovery of the underlying facts of a

particular dispute. *See  Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)

("Because the work product doctrine is intended only to guard against divulging the attorney's

strategies and legal impressions, it does not protect facts concerning the creation of work product

or facts contained within the work product."); *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670,

2012 WL 5495514, at *50 (S.D. Ohio Nov. 13, 2012) ("neither the attorney-client privilege nor

the work product doctrine applies to prevent the disclosure of underlying facts, regardless of who

obtained those facts"); *Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.*, No.

2:05-cv-889, 2007 WL 543929, at *3 (S.D. Ohio Feb.16, 2007) (to the extent documents contain

strictly factual information, as opposed to legal conclusions or opinions, "that factual information

cannot be immunized from discovery simply by incorporating it into a document which is

entitled to work-product protection").  Defendants may inquire about the relevant facts by

deposing the appropriate witnesses or through other discovery vehicles. *See* 8 Wright & Miller, Federal Practice & Procedure, § 2023 ("courts have consistently held that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery") (emphasis added). As the undersigned has previously noted, it is likely that Varnau will be a fact witness in this case given his work as a volunteer assistant to his wife, Dr. Judith Varnau, at the time of Mr. Goldson's death and during the ensuing inquiry into the cause of his death. Relevant factual information Varnau may have learned while working as an unpaid assistant to the Brown County coroner and then shared with counsel would not be entitled to work product protection. Thus, to the extent defendants may seek documents or deposition testimony from Varnau about the facts underlying the death of Mr. Goldson, such facts must be disclosed. However, because plaintiff's privilege log documents consist of the mental impressions and legal strategy of counsel and Varnau, those documents are not discoverable.

It is therefore **ORDERED** that nonparty Dennis Varnau's motion to quash (Doc. 15) is **GRANTED**.[6]

Date: ___7/21/17___

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

---

[6] Plaintiff also contends that the subpoena should be quashed on the basis that some of the documents contain "privileged communication with Varnau's personal counsel." (Doc. 15). The Court need not reach this issue as the documents appearing on the privilege log are protected as work product.