# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ASHLEY BARD, *individually*
*and as the administrator for the*
*Estate of Zachary Ryan Goldson*,
      Plaintiff,

vs.

Brown County, *et al*.,
      Defendants.

Case No. 1:15-cv-00643

Dlott, J.
Litkovitz, M.J.

**ORDER**

      Plaintiff Ashley Bard brings this action against defendants Brown County, Ohio; Brown County Sheriff Dwayne Wenninger; Brown County Sheriff's Office employees Ryan Wedmore, Larry Meyer, Jason Huff, George Dunning, Zane Schadle, and Sarah McKinzie; and two John Doe/Jane Doe defendants. Plaintiff brings this action individually and on behalf of decedent Zachary Ryan Goldson, alleging civil rights violations arising out of Goldson's death on October 5, 2013, during his incarceration as a pretrial detainee at the Brown County Jail. The matter is before the Court on defendants' motion for sanctions and supporting exhibits (Docs. 56, 57), plaintiff's response in opposition to the motion and supporting exhibits (Doc. 58), and defendants' reply (Doc. 63). The parties presented oral arguments on the motion on March 5, 2018. (Doc. 70).

## I. Background

      Plaintiff filed this action on October 2, 2015 (Doc. 1) and an amended complaint on October 5, 2015 (Doc. 2). Plaintiff brings claims under 42 U.S.C. § 1983 for excessive use of force, denial of medical care, failure to keep the decedent safe, and failure to preserve evidence. Plaintiff also brings state law claims for negligence, assault and battery, wrongful death,

spoliation of evidence, and intentional infliction of emotional distress.  The present dispute

centers on testing that plaintiff's expert, Scott P. Roder, performed on a sprinkler head and

escutcheon in October 2017.  Defendants allege that the sprinkler head and escutcheon used by

plaintiff's expert for testing were the same sprinkler head and escutcheon that were affixed to the

ceiling in Goldson's cell at the Brown County Jail on the date of his death (the "original"

sprinkler head and escutcheon), and around which Goldson tied a sheet and hung himself.

Plaintiff alleges that the actual sprinkler head and escutcheon in Goldson's cell at the time of his

death were subsequently removed from the cell and were not secured by defendants, and the

present whereabouts of these items are unknown.  Plaintiff also alleges that Goldson's death was

a homicide and the cause of death was strangulation.  (Doc. 2).

The Court held an informal discovery conference with counsel on July 24, 2017 and a

follow-up conference on July 26, 2017 regarding a site visit to the Brown County Jail for

discovery purposes.  (Docs. 42, 44).  The Court issued an Order on July 27, 2017 that stated in

relevant part:

> 1. Plaintiff's counsel and individuals authorized by this Order are permitted to
> observe the layout of the jail cell, perform measurements, take photographs, and
> make video recordings inside the jail cell. . . .  Plaintiff will perform any
> potentially destructive testing off site.
> . . . .
> 4.  Plaintiff has opted to use a new sprinkler head and escutcheon that is in the
> possession of the Brown County Coroner for purposes of the site visit, subject to
> any restrictions imposed by the Brown County state court, rather than use the
> sprinkler head and escutcheon currently in the Brown County Sheriff's
> possession.

(Doc. 45).

Plaintiff's counsel sent a letter to the Court dated July 28, 2017 advising the Court that

plaintiff's expert had "agreed to conduct his in-cell inspection and investigation using the

sprinkler head and escutcheon plate in the possession of the Brown County Sheriff's Office as

previously suggested by the Court and preferred by [defendants'] attorneys. . . . Further, since the Court directed Plaintiff to conduct any investigation that could cause potential destruction to the jail in an environment outside the actual jail, Plaintiff's expert will arrange to do that." (Doc. 56, Exh. A). Counsel stated that plaintiff's expert would "need to take possession of the sprinkler head and escutcheon plate once it has been removed from the cell at the Brown County Jail" following the jail site visit. (*Id.*). On July 30, 2017, defendants' counsel sent a letter to the Court stating that defendants did not object to plaintiff's counsel "signing out from the Brown County Jail Evidence Room the sprinkler head and escutcheon that was installed in Mr. Goldson's cell on or about October 5, 2013." (Doc. 56, Exh. B). However, defendants clarified that:

> Plaintiff's possession and use of the above items is conditioned upon the items only being subjected to visual inspection, videotaping, photographing, and/or measurement. Before these items are possessed or used by Plaintiff, Defendants require that Plaintiff specify in writing what Plaintiff intends to do with the items both on and off site, what (if any) testing will be conducted and duration of Plaintiff's possession. Defendants object to and will not permit potential destructive testing, including but not limited to pulling, pushing, or applying physical force in an attempt to create or recreate "a gap" between the cone and ceiling.

(*Id.*).

In response to counsel's letters, the Court issued an Order on July 31, 2017 which amended its July 27, 2017 Order by including the following provisions:

> 1. Plaintiff has now opted to use the sprinkler head and escutcheon currently in the Brown County Sheriff's possession. Plaintiff's attorneys shall be responsible for signing out from the Brown County Jail Evidence Room the sprinkler head and escutcheon. In accordance with the Court's July 27, 2017 Order, plaintiff's counsel and individuals authorized by that Order are permitted to observe the layout of the jail cell, perform measurements, take photographs, and make video recordings inside the jail cell.

> 2. Following the site visit, plaintiff's attorneys may take possession of the sprinkler head and escutcheon. However, to the extent plaintiff intends to

perform any potentially destructive testing off site using said sprinkler head and escutcheon, plaintiff must first notify defendants in writing of the specific testing plaintiff's expert intends to perform at least two weeks prior to such testing to give defendants an opportunity to object and bring any issues to the Court for resolution prior to such testing.

(Doc. 47).

## II. Defendants' motion for sanctions

Defendants filed their motion for sanctions under Fed. R. Civ. P. 37 or, in the alternative, under the Court's inherent power, on December 27, 2017. (Doc. 56). Defendants allege that plaintiff violated the Court's July 31, 2017 Order by failing to give defendants two weeks' advance written notice of their intent to perform "potentially destructive testing off site using [the] sprinkler head and escutcheon" signed out from the Brown County Jail evidence room. Defendants allege that plaintiff's expert, Scott Roder, performed "potentially destructive testing" using the sprinkler head and escutcheon in October 2017 as documented in Mr. Roder's supplemental expert report and videos linked to the supplemental report. Defendants contend they received no notice of the potentially destructive testing between July 31, 2017 and the date of the testing. Defendants allege that the testing caused destructive damage to the escutcheon as documented by their expert witness, John F. Wiechel, Ph.D., P.E. (Doc. 56, Exhs. E, F, G, H; Frank Hatfield Aff., Exh. K). As relief for plaintiff's alleged failure to abide by the Court's Order and for the resulting damage to the escutcheon purportedly caused by plaintiff's destructive testing, defendants seek: (1) the reasonable expenses, including attorney fees, they incurred as a result of plaintiff's failure to properly disclose the required information about the expert witness and testing to be performed, including the costs of this motion and any future costs expended in resolving the prejudice caused by plaintiff's destructive testing (Fed. R. Civ. P. 37(c)(1)(A)); (2) exclusion of Mr. Roder's supplemental expert report dated October 16, 2017

4

and linked videos, testimony from Mr. Roder related to his alleged destructive testing on the escutcheon and any conclusions he drew from the testing, and the expert witness report of Dr. Richard Collins, Ph.D., which adopts Mr. Roder's conclusions (Doc. 56, Exhs. C, D) (Fed. R. Civ. P. 37(b)(2)(A)(ii), (c)(1); and (3) dismissal of plaintiff's spoliation claim (Fed. R. Civ. P. 37(b)(2)(A)(iii),(v), (c)(1)).

In response, plaintiff argues that her expert complied with limits the Court imposed on testing to be performed on-site at the Brown County Jail (Doc. 45) and off-site in its July 31, 2017 Order (Doc. 47). (Doc. 58). Plaintiff challenges defendants' claim that she failed to comply with the limitations the Court imposed on off-site testing. First, plaintiff alleges there is no evidence that the sprinkler head and escutcheon used in Mr. Roder's off-site testing were the original sprinkler head and escutcheon from Goldson's cell. Plaintiff alleges there is not a proper chain of custody that shows the sprinkler head and escutcheon signed out from the Brown County Jail evidence room are the original sprinkler head and escutcheon from Goldson's cell. Second, plaintiff argues that Mr. Roder's testing was not "potentially destructive," and she denies that the testing actually damaged the sprinkler head or escutcheon. (*Id*. at 8). To the contrary, plaintiff alleges the escutcheon used in Mr. Roder's testing was "already deformed, bent and broken" upon receipt from defendants' counsel, and the escutcheon plate was returned in the "exact condition" it was in when received for on-site testing on August 1, 2017.[1] (*Id*. at 8-9). Finally, plaintiff argues that her counsel sent defendants' counsel a detailed outline of the testing to be performed prior to August 1, 2017 in a letter dated July 21, 2017. (*Id*., citing Exh. 5). Plaintiff contends that defendants' motion for sanctions is therefore frivolous and defendants

---

[1] Plaintiff's memorandum refers to the date of the on-site inspection and testing as August 2, 2017, but plaintiff's Amended Request and defendants' motion both identify the date as August 1, 2017. (Doc. 56; Doc. 58, Exh. 5). The Court will therefore use the August 1, 2017 date in this Order.

and their counsel should be admonished that similar actions in the future could result in sanctions on defendants.

In reply, defendants argue that plaintiff has not shown she complied with the Court's July 31, 2017 discovery Order or gave defendants notice of the "potentially destructive" testing plaintiff's expert intended to perform. (Doc. 63). Defendants allege that photographs they have submitted document that plaintiff's expert performed "destructive testing" and altered the condition of the escutcheon after plaintiff's counsel took possession of it, and plaintiff has submitted only "unauthenticated and self-serving exhibits" to support her position that the escutcheon was "already deformed, bent and broken" when her counsel took possession of it. (*Id*. at 2-3). Defendants argue that they were not given advance notice of the testing Mr. Roder intended to perform, which the videos show involved "pulling, pushing, or applying physical force in an attempt to create or recreate 'a gap' between the cone and ceiling." (*Id*. at 4, citing Doc. 56, Exhs. B, C). Defendants argue that plaintiff's July 21, 2017 Amended Request for Entry and Inspection (Doc. 58, Exh. 5), which defendants objected to and which predates the July 31, 2017 Order, does not give the required notice of potentially destructive off-site testing. (*Id*. at 4-5).

## III. Governing discovery rules and supporting law

Fed. R. Civ. P. 37(b)(2)(A) allows the Court to impose sanctions for failure to comply with a Court Order, including dismissal of the action in whole or in part. *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (N.D. Ohio 2013). Rule 37 provides that if "a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)-- fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or

37(a), the court where the action is pending may issue further just orders," including the following:

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> **(iii)** striking pleadings in whole or in part;
> **(iv)** staying further proceedings until the order is obeyed;
> **(v)** dismissing the action or proceeding in whole or in part;
> **(vi)** rendering a default judgment against the disobedient party; or
> **(vii)** treating as contempt of court the failure to obey any order. . . .

Fed. R. Civ. P. 37(b)(2)(A). Instead of or in addition to these orders, "the Court must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Rule 37 further provides that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition, the court:

> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> **(B)** may inform the jury of the party's failure; and
> **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

(*Id*.).

A court can consider the goals of both punishment and deterrence in selecting a sanction under Rule 37. *Laukus*, 292 F.R.D. at 500 (citing *Peltz v. Moretti,* 292 F. App'x 475, 478 (6th Cir. 2008); *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995); *Bratka v. Anheuser-Busch Co.,* 164 F.R.D. 448, 459 (S.D. Ohio 1995) (in turn citing *National Hockey League v.*

*Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976)). Courts in the Sixth Circuit apply a four-factor test to determine whether "the imposition of extreme sanctions" under Rule 37(b) is appropriate. *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2015 WL 4742686, at *6 (S.D. Ohio Aug. 11, 2015). These factors are: "(1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith or fault"; (2) "whether the adversary was prejudiced by the party's failure to cooperate in discovery"; (3) "whether the party was warned that failure to cooperate could lead to the sanction"; and (4) with regard to a dismissal, "whether less drastic sanctions were first imposed or considered." *Id.* (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). *See also Fharmacy Records v. Nassar,* 379 F. App'x 522, 524 (6th Cir. 2010); *Reg'l Refuse Sys. v. Inland Reclamation Co.,* 842 F.2d 150, 155 (6th Cir. 1988)*, superseded by statute on other gds*. "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). The sanctioned party has the burden to prove that the failure to comply with discovery obligations "was the result of inability and not due to willfulness, bad faith or fault[.]" *Laukus,* 292 F.R.D. at 500 (citing *Reg'l Refuse Sys.,* 842 F.2d at 154). *See also Reyes,* 307 F.3d at 458.

A finding of "willfulness, bad faith, or fault . . . requires a clear record of delay or contumacious conduct. Contumacious conduct is behavior that is perverse in resisting authority and stubbornly disobedient. The [party's] conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Brown,* 2015 WL 4742686, at *6 (quoting *Barron v. U. of Michigan*, 613 F. App'x 480, 484 (6th Cir. 2015) (internal citations and quotation marks omitted)). "[A] defendant is prejudiced by a plaintiff's failure to cooperate in discovery when the defendant 'waste[d] time, money, and effort

in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Fharmacy Records*, 379 F. App'x at 524 (citing *Harmon v. CSX Transp., Inc.,* 110 F.3d 364, 368 (6th Cir. 1997)). Prior notice that a party's further noncompliance would result in dismissal is not indispensable but is one factor to be considered. *Id*. (citing *Reyes,* 307 F.3d at 458; *Link v. Wabash R. Co*., 370 U.S. 626, 633 (1962) (noting that under some circumstances, the district court can "dismiss a complaint . . . even without affording notice of its intention to do so")). Finally, although the court is required to first look to an "alternative sanction [that] would protect the integrity of the [judicial] process," the district court has the power to dismiss the complaint as "the first and only sanction." *Id*. (citing *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 738 (6th Cir. 2008) (quoting *Harmon*, 110 F.3d at 368) (quotation marks omitted)).

In addition to the authority granted under Rule 37, "[f]ederal courts possess certain 'inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, 137 S.Ct. 1178, 1186 (2017). "A district court has the inherent power to sanction a party when that party exhibits bad faith," including by refusing to comply with a court order. *Brown,* 2015 WL 4742686, at *6 (quoting *Youn v. Track, Inc*., 324 F.3d 409, 420 (6th Cir. 2003) (collecting cases)). *See also Laukus*, 292 F.R.D. at 502 (courts have the inherent power "to impose sanctions to prevent the abuse of the judicial process") (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991); *Link,* 370 U.S. at 629-30 ("federal trial courts have the inherent power to manage their own dockets")). Courts may exercise their inherent power to impose sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the party's conduct was "tantamount to bad faith." *Laukus,* 292 F.R.D. at 502-03 (citing *Metz v. Unizan Bank,* 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers,* 501 U.S. at 45-46; *Roadway Express,*

*Inc. v. Piper,* 447 U.S. 752, 767 (1980); *United States v. Moss-American, Inc.,* 78 F.R.D. 214, 216 (E.D. Wis. 1978) ("it is within the inherent equitable powers of this court to dismiss an action when a just determination of the action has been seriously thwarted by a plaintiff's willful misconduct")). "[T]he factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same." *Fharmacy Records*, 379 F. App'x at 524 (citing *Coleman v. Am. Red Cross,* 23 F.3d 1091, 1094 n. 1 (6th Cir. 1994)). The district court can invoke "its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes." *U.S. v. Quebe*, 321 F.R.D. 303, 313 (S.D. Ohio 2017) (quoting *Metz*, 655 F.3d at 491) (in turn quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co*., 307 F.3d 501, 514 (6th Cir. 2002)). *See also Brown,* 2015 WL 4742686, at *6 (a court ordinarily should rely on the federal rules rather than its inherent power to impose sanctions, but the court can invoke its inherent power even if there are procedural rules under which it may sanction the same conduct) (citing *Metz*, 655 F.3d at 491).

## IV. Sanctions are warranted

The imposition of sanctions under Fed. R. Civ. P. 37(b)(2) is appropriate here for plaintiff's failure to comply with the Court's July 31, 2017 Order governing discovery. (Doc. 47). The Order imposed a notice obligation on plaintiff which, by its terms, applied to (1) "off site" (2) "potentially destructive testing" (3) of "the sprinkler head and escutcheon currently in the Brown County Sheriff's possession" (4) "[f]ollowing the site visit." (*Id*.). The Order expressly required that: "*Following the site visit*, . . . to the extent plaintiff intends to perform any potentially destructive testing off site using said sprinkler head and escutcheon, *plaintiff must first notify defendants in writing of the specific testing plaintiff's expert intends to perform at*

*least two weeks prior to such testing* to give defendants an opportunity to object and bring any issues to the Court for resolution prior to such testing." (*Id.*) (emphasis added). The record shows that following the site visit, plaintiff did not give defendants advance written notice of Mr. Roder's October 2017 off-site testing.

Plaintiff alleges that she was not required to give written notice following the site visit because (1) the testing Mr. Roder performed was not "potentially destructive" so as to bring the testing within the terms of the July 31, 2017 Order, and (2) plaintiff provided a "DETAILED outline" of the testing plaintiff's expert would perform "PRIOR" to the August 1, 2017 site visit. (Doc. 58 at 8, citing Exh. 5- Plaintiff's Amended Request for Entry and Inspection Directed to Defendant Brown County and Brown County Sheriff) (emphasis in the original). Plaintiff's arguments are disingenuous. First, plaintiff's Amended Request did not suffice to give defendants advance notice of the testing plaintiff's expert intended to perform following the site visit. (*See* Doc. 47). Plaintiff's counsel emailed the Amended Request to defendants' counsel and the Court on July 21, 2017, ten days before the Court issued its July 31, 2017 Order which imposed the notice requirements for the off-site testing. The Amended Request concerns testing to be performed at the site visit itself, which occurred on August 1, 2017. (Doc. 58, Exh. 5). The Amended Request gave no advance notice of off-site testing plaintiff intended to perform.

Further, the Amended Request gave no indication that plaintiff intended to perform any testing using the original sprinkler head and escutcheon in the possession of the Brown County Sheriff. Rather, plaintiff asked that defendants provide the original sprinkler head and escutcheon prior to the site visit because her expert intended to "have installed a duplicate make and model of the sprinkler head and escutcheon plate. . . ." (Doc. 58, Exh. 5, ¶ 3(a)). The Court confirmed on July 27, 2017 that plaintiff "opted to use a new sprinkler head and escutcheon"

rather than those "currently in the Brown County Sheriff's possession." (Doc. 45). Plaintiff first advised the Court in a letter sent by email the following day that she now intended to use the original sprinkler head and escutcheon plate in the possession of the Brown County Sheriff at the site visit. (Doc. 56, Exh. A).

Further, the Amended Request did not give defendants advance notice of the type of testing Mr. Roder would perform. This is clear from the correspondence and Court Orders that post-date the Amended Request. In its July 27, 2017 Order, the Court authorized plaintiff's counsel and other individuals to "observe the layout of the jail cell, perform measurements, take photographs, and make video recordings inside the jail cell. . . .," but plaintiff was required to "perform any potentially destructive testing off site." (Doc. 45). Plaintiff's counsel sent an email to the Court the next day stating that "since the Court directed Plaintiff to conduct any investigation that could cause potential destruction to the jail in an environment outside the actual jail, Plaintiff's expert will arrange to do that." (Doc. 56, Exh. A). Plaintiff's counsel did not provide any further details in the email as to the type of testing plaintiff's expert intended to perform. The Court issued its amended Order on July 31, 2017 acknowledging that plaintiff now intended to use the original sprinkler head and escutcheon currently in the Brown County Sheriff's possession at the jail; allowing plaintiff's counsel and other individuals authorized by the Court's July 27, 2017 Order to observe, take measurements and photographs, and make video recordings inside the jail cell; and requiring plaintiff to "first notify defendants in writing of the specific testing plaintiff's expert intends to perform" to the extent plaintiff intended to conduct any "potentially destructive testing off site" using the original sprinkler head and escutcheon so as to allow defendants an opportunity to raise objections and bring any issues to the Court's

attention for resolution prior to the testing. (Doc. 47). It is clear that plaintiff's prior Amended Request did not provide the mandatory notice contemplated by the Order.

In addition, the language of the Court's July 31, 2017 Order makes clear that plaintiff's prior Amended Request did not satisfy the notice requirement. If plaintiff's Amended Request had been sufficient, there would be no reason for the Court to direct plaintiff to "first notify defendants in writing of the specific testing plaintiff's expert intends to perform" in the July 31, 2017 Order. Moreover, the direction to "notify defendants in writing" is preceded by the temporal phrase "Following the site visit." This phrase clearly delineates the post-August 1, 2017 site visit notification requirement contemplated by the Court. Finally, the Court's Order requiring advance notification was intended "to give defendants an opportunity to object and bring any issues to the Court for resolution prior to such testing." (Doc. 47). It is clear in light of the parties' antagonistic discovery relationship and the Court's repeated intervention in their discovery disputes prior to July 31, 2017, that the Court intended to preempt any disputes over the specific testing plaintiff planned to conduct *before* the testing occurred. Thus, plaintiff's Amended Request dated July 21, 2017 did not give defendants advance written notice of the off-site testing to be performed by Mr. Roder in October 2017 using the original sprinkler head and escutcheon in the possession of the Brown County Sheriff.

In addition, it cannot reasonably be disputed that the testing performed by Mr. Roder was "potentially destructive testing." (*Id.*). In response to plaintiff's notice of her intent to use the original sprinkler head and escutcheon at the jail visit, defendants advised the Court that they did not object to plaintiff signing out the original items on the condition that plaintiff's "possession and use of the . . . items [was] conditioned upon the items only being subjected to visual inspection, videotaping, photographing, and/or measurement." (Doc. 56, Exh. B). Defendants

stated that they "object to and will not permit potential[ly] destructive testing, including but not limited to pulling, pushing, or applying physical force in an attempt to create or recreate 'a gap' between the [escutcheon] cone and ceiling." (*Id.*). In response to defendants' objections, the Court issued its July 31, 2017 Order requiring plaintiff to give advance written notice of "potentially destructive testing" using the original sprinkler head and escutcheon. (Doc. 47). The video recordings of Mr. Roder's testing linked to his supplemental expert report show that his testing involved securing a sheet around the escutcheon, hanging a 150 pound ballistics gel dummy from the escutcheon, and pushing, pulling, and exerting physical force on the sheet, the dummy, and the escutcheon. (Doc. 56, Exh. C; Doc. 57).

Both Mr. Roder and his assistant, Patrick Mooney, performed the testing. The video recordings show that Mr. Mooney performed two tests using the escutcheon. In his first test, Mr. Mooney explains that he will "attempt to weave a bedsheet around the gap in the escutcheon." Mr. Mooney pushes on the escutcheon and squeezes it with his hands as he wraps a sheet around the escutcheon, tugs with both hands on the sheet while he works the sheet into the gap between the escutcheon and the ceiling, and repeatedly causes the escutcheon to turn back and forth and to scrape against the wood ceiling during the nearly three minutes of testing. As he performs the test, Mr. Mooney grimaces with apparent exertion and states, "This is taking a lot of force." Mr. Mooney repeats the test using a sheet with pre-tied knots. Mr. Mooney explains, "I'm manipulating the escutcheon," which he does for a period of just over three minutes. Mr. Mooney repeatedly turns the escutcheon by using both hands and by pulling on the sheet, which causes the sheet-covered portion of the escutcheon to rub against the ceiling. He tugs on the sheet multiple times with both hands to tighten it around the escutcheon. Mr. Mooney grunts, pants and breathes heavily as he manipulates the sheet around the escutcheon and states,

"There's a lot of force and leverage needed to get this around. As you can see, I'm struggling to get this fully around the circumference."

Mr. Roder also performed a test during which he wove a sheet around the escutcheon. The 95-second video recording of Mr. Roder's testing shows him forcefully pulling on the sheet with both hands and the sheet in turn tugging on the escutcheon as Mr. Roder works the sheet into the gap between the escutcheon and the ceiling. Mr. Roder hits the escutcheon with his fist at one point. Mr. Roder describes the testing as "hard work" and he can be heard breathing heavily, panting and loudly grunting throughout the test.

Given the design of the tests and the amount of force that was applied during the testing, as corroborated by Mr. Roder and Mr. Mooney's contemporaneous comments regarding the physical exertion required to perform the tests, it is clear that damage to the escutcheon could result. Further, defendants have submitted evidence to show that the escutcheon was actually damaged during the testing. Defendants' expert witness, Dr. Wiechel, has opined that the escutcheon was physically altered between the date plaintiff took possession of it and the date of Mr. Roder's testing (Doc. 56, Exh. H), and defendants have submitted photographs and other evidence that support his opinion. (*Id.*, Exhs. E, F, G; Frank Hatfield Aff., Exh. K). Plaintiff denies that the escutcheon was damaged during her expert's testing and alleges the escutcheon plate was returned to the Brown County Jail evidence room in the "exact condition" it was in when received for on-site testing on August 1, 2017. (Doc. 58 at 8). However, plaintiff has submitted no affidavits or other evidence to support her claim and to rebut defendants' evidence on this point.

For these reasons, it is clear that plaintiff did not give advance written notice of her intention to perform potentially destructive testing using the sprinkler head and escutcheon in the

possession of the Brown County Sheriff. The Court further finds that plaintiff's failure to comply with the Court's July 31, 2017 Order requiring advance notice demonstrates bad faith. Plaintiff disregarded both this Court's Order and the admonition of her own expert witness, Dr. Collins, who advised plaintiff's counsel that opposing counsel should be invited to Mr. Roder's testing, which he described as the "experiment to determine the breakaway load." (Doc. 63 at 5, citing Exh. B, Collins Depo. at 9; Depo. Exh. 5). Plaintiff has not offered a legitimate reason for her failure to obey the Court's Order. Plaintiff's unexplained and unjustified failure to give advance notice demonstrates "an intent to thwart judicial proceedings or a reckless disregard for the effect of [her] conduct on those proceedings." *See Brown,* 2015 WL 4742686, at *6. The first factor for the imposition of sanctions is satisfied.

The second factor – prejudice to defendants – is also satisfied by plaintiff's failure to give advance written notice of Mr. Roder's testing using the original sprinkler head and escutcheon. For purposes of Rule 37, a litigant is prejudiced by an opposing party's "dilatory conduct" if the litigant must "waste time, money, and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide." *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013) (quoting *Harmon*, 110 F.3d at 368). *See also Brown*, 2015 WL 4742686, at *7 (although the plaintiffs ultimately obtained the discovery of certain documents they sought, they were prejudiced by having to expend "time, money, and effort" to compel the production of documents that the defendant was legally obligated to provide from the beginning). A litigant may suffer "more fundamental" prejudice as a result of the opposing party's failure to preserve evidence. *See, e.g., Brown,* 2015 WL 4742686, at *8.

Here, as in *Brown*, defendants have been prejudiced by plaintiff's failure to comply with the Court's July 31, 2017 Order. Defendants invested time, money and effort to insure that they

16

would receive advance notice of any potentially destructive testing involving the original sprinkler head and escutcheon. Plaintiff ignored the Court Order to provide such notice, which required defendants to spend additional resources to seek relief from the Court.

Defendants allege that they also suffered more fundamental prejudice because (1) the physical condition of the escutcheon was altered during Mr. Roder's testing, and (2) defendants have been denied the same evidentiary access to the escutcheon that plaintiff obtained. However, whether defendants suffered the more fundamental prejudice they allege cannot be definitively resolved in connection with defendants' motion for sanctions. Plaintiff has raised issues as to whether a proper chain of custody was established for the sprinkler head and escutcheon that were removed from Goldson's cell after his death. Questions remain as to whether the sprinkler head and escutcheon in the possession of the Brown County Sheriff are the same sprinkler head and escutcheon that were in the decedent's cell on the date of his death and whether defendants can establish a proper chain of custody for these items. If not, then it does not appear that defendants suffered any further prejudice as a result of alteration of the escutcheon during testing. Moreover, although defendants argue they have been prejudiced by being denied the same evidentiary access to the escutcheon that plaintiff obtained, defendants apparently had a model of the original escutcheon made prior to Mr. Roder's testing. Thus, they have not necessarily been fundamentally prejudiced by any alteration of the original escutcheon that occurred during Mr. Roder's testing. Nonetheless, regardless of how these issues are resolved, it is clear that defendants were prejudiced to some extent as a result of plaintiff's failure to comply with the Court's July 31, 2017 Order by having to expend time and money as a consequence of plaintiff's failure to obey the Order. Thus, the prejudice factor weighs in favor

of imposing some sanction on plaintiff or her counsel for failing to comply with the Court's Order.

As to the third factor, this Court did not give plaintiff prior notice that failure to comply with its discovery orders could lead to "extreme sanctions." *See Brown,* 2015 WL 4742686, at *8. However, given the Court's finding that plaintiff acted in bad faith, prior notice is not necessary. *Id.* (citing *Harmon*, 110 F.3d at 367). Further, insofar as the Court finds that a sanction short of dismissal is appropriate, the lack of notice is simply one consideration to be weighed against the other factors. *Id.* (citing *Reyes*, 307 F.3d at 458). In the context of this case, the lack of notice carries little weight given the amount of time and attention the parties and the Court devoted to the testing issue prior to the July 31, 2017 Order, which highlighted the importance of giving defendants advance notice of the type of testing Mr. Roder intended to perform.

The relevant factors weigh in favor of the imposition of sanctions for plaintiff's failure to comply with the Court's July 31, 2017 discovery Order. The only question remaining is what sanction is appropriate. Defendants request dismissal of plaintiff's spoliation claim. However, this is not an appropriate sanction for plaintiff's failure to comply with the Court's discovery Order under either Rule 37 or the Court's inherent authority because the sanction does not bear a reasonable connection to the discovery violation. Plaintiff's spoliation claim is premised on plaintiff's allegations that after Goldson's death, defendants (1) violated their duty to preserve a surveillance video computer system, and (2) did not comply with their duty to preserve the sprinkler escutcheon plate by allowing the plate to be removed from the cell and replaced with a new sprinkler. (Doc. 2, ¶¶ 74-81). Defendants' motion for sanctions is based on their claim that plaintiff did not comply with the Court's Order to give advance notice of "potentially destructive

testing" of the escutcheon and sprinkler head after these items had been removed from the cell. Plaintiff's violation of the discovery Order does not impact the resolution of her spoliation claim. The Court therefore finds that dismissal of the spoliation claim is not an appropriate sanction for violation of the discovery Order.

The Court has also considered whether the supplemental expert report of Mr. Roder, the videos linked to his report, and the expert report of Dr. Collins should be excluded from evidence as a sanction for plaintiff's failure to give advance notice of her expert's "potentially destructive testing." The Court declines to exclude this evidence as a sanction for violation of the discovery Order for two reasons. First, defendants are not precluded from raising objections to introduction of the recordings and Mr. Roder's supplemental expert findings into the record in connection with any substantive motions or at trial. Second, as discussed *supra*, although the Court cannot condone plaintiff's disregard of its Order, the Court is unable to find in connection with the sanctions motion that defendants suffered fundamental prejudice as a result of plaintiff's failure to comply with the Order.

The Court finds that an award of reasonable expenses, including attorney fees, is an appropriate sanction under Rule 37(b)(2)(C) and the Court's inherent authority for plaintiff's blatant disregard of the Court's July 31, 2017 discovery Order. Defendants were required to expend time and money to attempt to obtain assurances of advance notice of potentially destructive testing and to obtain relief when plaintiff failed to comply with the Court's Order to give advance written notice. Defendants are entitled to be compensated for their expenditures. The Court will therefore give defendants an opportunity to submit documentation of their reasonable expenses incurred in connection with plaintiff's failure to comply with the Court's

July 31, 2017 Order.[2]  The sanction will be imposed against plaintiff's counsel rather than plaintiff.  It was plaintiff's counsel who communicated with opposing counsel and the Court concerning all discovery matters, participated in the discovery conferences with the Court, made arrangements for the expert testing, and oversaw the testing.  Plaintiff's counsel - not plaintiff - were responsible for complying with the terms of the July 31, 2017 Order by giving advance written notice of the testing to be performed by plaintiff's expert.  It is therefore appropriate that plaintiff's counsel bear the costs resulting from their failure to abide by the Court's Order.  *See* Fed. R. Civ. P. 37(b)(2)(C) (attorney advising the party may be ordered to pay the reasonable expenses, including attorney fees, caused by the party's failure to obey an order to provide or permit discovery).

### IT IS THEREFORE ORDERED THAT:

(1)  Defendants' motion for sanctions (Doc. 56) is **GRANTED** in favor of defendants and against plaintiff's counsel.

(2)  Defendants shall have **fourteen (14 days)** from the date of this Order to submit documentation of their reasonable expenses, including attorney fees, incurred in connection with the failure of plaintiff's counsel to comply with the Court's July 31, 2017 Order (Doc. 47).


Date:  3/21/2018                            *s/Karen L. Litkovitz*
                                             Karen L. Litkovitz
                                             United States Magistrate Judge


---

[2] The Magistrate Judge has the authority to enter an order granting this non-dispositive relief under 28 U.S.C. § 636(b)(1)A).  *See Summit Assets, LLC v. O'Malley*, No. 11-12327, 2012 WL 13008759, at *1, n. 1 (E.D. Mich. July 31, 2012) (citing *Bell-Flowers v. Progressive Ins. Co.*, No. 04-3026 BP, 2005 WL 3434818, at *2 (W.D. Tenn. Dec. 13, 2005) (collecting cases)).