# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ASHLEY BARD, *individually*
*and as the administrator for the*
*Estate of Zachary Ryan Goldson*,
    Plaintiff,

vs.

Brown County, *et al.*,
    Defendants.

Case No. 1:15-cv-00643

Dlott, J.
Litkovitz, M.J.

**ORDER**

Plaintiff Ashley Bard brings this action against defendants Brown County, Ohio; Brown

County Sheriff Dwayne Wenninger; Brown County Sheriff's Office employees Ryan Wedmore,

Larry Meyer, Jason Huff, George Dunning, Zane Schadle, and Sarah McKinzie; and two John

Doe/Jane Doe defendants. Plaintiff brings this action individually and on behalf of decedent

Zachary Ryan Goldson, alleging civil rights violations arising out of Goldson's death on October

5, 2013, during his incarceration as a pretrial detainee at the Brown County Jail. Defendants

filed a motion for sanctions (Doc. 56) seeking to recover their reasonable expenses, including

attorney fees, incurred in connection with plaintiff's failure to comply with the Court's July 31,

2017 Order (Doc. 47). On March 22, 2018, the Court granted defendants' motion in favor of

defendants and against plaintiff's counsel. (Doc. 78). The Court found that an award of

reasonable expenses, including attorney fees, is an appropriate sanction under both Rule

37(b)(2)(C) and the Court's inherent authority for "plaintiff's blatant disregard of the Court's

July 31, 2017 discovery Order." (*Id*. at 19). The Court found the sanction should be imposed

against plaintiff's counsel rather than plaintiff and gave defendants an opportunity to submit

documentation of their reasonable expenses incurred in connection with plaintiff's counsel's

failure to comply with the Court's July 31, 2017 Order. (*Id*. at 20). Defendants submitted notice

of their attorney fees and expenses. (Doc. 81). Plaintiff, through counsel, filed objections to the sanctions Order (Doc. 82), which the District Judge overruled (Doc. 96). Plaintiff's counsel subsequently submitted a memorandum in opposition to defendants' attorney fees and expenses. (Doc. 99). The matter is now ripe for a determination of the reasonable attorney fees and expenses defendants are entitled to recover as a sanction for the discovery violation by plaintiff's counsel.[1]

Defendants request two categories of expenses: (1) attorney fees totaling $16,746.50 (Doc. 81, citing Exh. A and Exhs. B, C and D, Affidavits of defendants' counsel Daniel T. Downey, ¶ 7, Frank Hatfield, ¶ 5, and Angelica Jarmusz, ¶ 5); and (2) $135.16 in costs that Mr. Hatfield incurred traveling 248 miles roundtrip from Columbus to Cincinnati for the sanctions hearing at a rate of $.54.5 per mile (*Id.*, citing Exh. B, Downey aff., ¶ 8, Exh. C, Hatfield aff., ¶¶ 7-8). Defendants have submitted time records to support the total of $16,881.66 they request as reimbursement. (Doc. 81, Exh. A). Defendants state that they have excluded from the amount requested those attorney fees attributable to Ms. Jarmusz' attendance at the sanctions hearing, and expert witness expenses and consultation fees of their expert, John Weichel. (Doc. 81). In addition to the attorney fees and expenses defendants have incurred to date, defendants ask that they be reimbursed for any amount they are required to spend in the future regarding this matter.

Plaintiff's counsel have submitted a memorandum in opposition to defendants' notice of reasonable expenses and attorney fees. (Doc. 99). Counsel argue that under *Goodyear Tire & Rubber Co. v. Haeger*, -- U.S. --, 137 S. Ct. 1178, 1182 (2017), any attorney fees this Court

---

[1] The Magistrate Judge has the authority to enter an order granting this non-dispositive relief under 28 U.S.C. § 636(b)(1)A). *See Summit Assets, LLC v. O'Malley*, No. 11-12327, 2012 WL 13008759, at *1, n.1 (E.D. Mich. July 31, 2012) (citing *Bell-Flowers v. Progressive Ins. Co.*, No. 04-3026 BP, 2005 WL 3434818, at *2 (W.D. Tenn. Dec. 13, 2005) (collecting cases)). *See also Catrinar v. Wynnestone Communities Corp.*, No. 14-11872, 2017 WL 4349284, at *1, n.1 (E.D. Mich. Sept. 30, 2017).

assesses as a sanction must be compensatory as opposed to punitive, meaning the sanction must be "calibrated" to the damages caused by the bad faith acts on which the sanction is based. *See Haeger*, 137 S. Ct. at 1186. They note that the causal connection required is a "but-for" causal link between the litigant's misconduct and the legal fees paid by the opposing party, i.e., the opposing party is entitled to only those fees that it would not have incurred in the absence of the litigant's misconduct. *Id*. at 1187. Plaintiff's counsel argue that applying the but-for test here, defendants are entitled to an award of $4,240.30 as reimbursement for their reasonable fees and expenses. Counsel compute this figure by deducting the following amounts from the requested sanction: (1) compensation for fees incurred prior to December 14, 2017, which counsel allege is the earliest date a sanction against plaintiff is mentioned in defendants' documentation, leaving a total of $9,582.00 billed from December 14, 2017 through April 3, 2018 by both Mr. Hatfield and Ms. Jarmusz; (2) $5,156.00 for work performed by Ms. Jarmusz (her hourly rate of $140.00 multiplied by her submitted hours), based on defendants' alleged representation that Ms. Jarmusz does not seek reimbursement for fees attributable to her work, leaving a total of $4,696.00 for Mr. Hatfield's work only from December 14, 2017 onward; (3) $402.50 for 2.30 hours that Mr. Hatfield devoted to drafting, editing and finalizing a summary of the sanctions hearing, which counsel complain is excessive, and drafting email correspondence to "Jeff Knapp," whose role in this litigation is unknown, which when subtracted from the reduced total of $4,696.00 leaves $4,293.50; and (4) $52.50 for a .30-hour telephone conference on March 26, 2018, between Mr. Hatfield and defendants' expert regarding fees relative to the destructive testing (Doc. 81, Exh. A at 36), which took place four days after the Court had granted the motion for sanctions. (Doc. 99).

The Court will first address plaintiff's counsel's reliance on *Haeger*, 137 S. Ct. 1178, to limit defendants' reasonable expenses to those incurred on or after December 14, 2017. The Supreme Court in *Haeger* held that whenever "a federal court exercises its inherent authority to sanction bad-faith conduct by ordering a litigant to pay the other side's legal fees, the award is limited to the fees the innocent party incurred solely because of the misconduct - or put another way, to the fees that party would not have incurred but for the bad faith." *Id.* at 1182. The Court here found that defendants were entitled to sanctions under both the Court's inherent power and under Fed. R. Civ. P. 37. (Doc. 78 at 19). The reasoning in *Haeger* indicates that while the Supreme Court's decision addressed sanctions imposed under the federal courts' inherent power, the holding applies to attorney fees imposed as a sanction under either the federal court's inherent power or under the Federal Rules of Civil Procedure. *See Lethiot v. JB Hunt Ship.*, No. 3:14-CV-488-CRS, 2017 WL 4077020, at *3 (W.D. Ky. Sept. 14, 2017) (finding *Haeger* to be instructive in that case, where sanctions were imposed under Fed. R. Civ. P. 16(f) in conjunction with Fed. R. Civ. P. 37(b)(2), given the Supreme Court's emphasis that whenever attorney fees are assessed as a sanction against a party who has acted in bad faith, the sanction "must be compensatory rather than punitive in nature") (citing *Haeger,* 137 S. Ct. at 1186) (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826-30 (1994)). To put it succinctly, "the court can shift only those attorney's fees incurred because of the misconduct at issue." *Haeger,* 137 S. Ct. at 1186. There must be a causal connection between the fee award and the "bad-faith act on which it is based"; otherwise, the sanction "crosses the boundary from compensation to punishment." *Id*. This need for the court to "establish a causal link [] between the litigant's misbehavior and legal fees paid by the opposing party" applies whenever the court uses "its inherent sanctioning authority (and civil procedures)" to impose attorney fees as a sanction for

misconduct. *Id.*, and n.5 ("For example, the Federal Rules of Civil Procedure provide that a district court may order a party to pay attorney's fees 'caused by' discovery misconduct, Rule 37(b)(2)(C), or 'directly resulting from' misrepresentations in pleadings, motions, and other papers, Rule 11(c)(4).").

Following the guidance of the Supreme Court in *Haeger*, the "but-for" causation standard must be applied in making an award of attorney fees in this matter. The Court may award fees incurred by defendants solely as a result of plaintiff's counsel's failure to comply with the July 31, 2017 Order. The Court has discretion to determine the appropriate award of fees but must "assess and allocate specific litigation expenses." *Id.* at 1187. The primary goal in doing so is "'to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "The court's fundamental job is to determine whether a given legal fee - say, for taking a deposition or drafting a motion - would or would not have been incurred in the absence of the sanctioned conduct." *Id.* "The award is then the sum total of the fees that, except for the misbehavior, would not have accrued." *Id.* (citing *Fox*, 563 U.S. at 837-838). The Court may decide in its discretion that all or a certain percentage of a category of expenses, such as expenses for expert discovery, "were incurred solely because of a litigant's bad-faith conduct." *Id.* If a party's attorneys would have conducted "similar fact-gathering activities - - taken many of the same depositions, produced and reviewed many of the same documents," and undertaken similar discovery absent the opposing party's misconduct, then it is not appropriate to award the attorney fees incurred in conducting those activities. *Fox*, 563 U.S. at 839-40.

Defendants are entitled to attorney fees for work performed by both Mr. Hatfield and Ms. Jarmusz, so long as those expenses resulted from the failure of plaintiff's counsel to comply with the Court's July 31, 2017 discovery Order. Plaintiff's counsel's request to exclude fees

attributable to Ms. Jarmusz's work is based on defendants' representation in their submission that while both Mr. Hatfield and Ms. Jarmusz "attended the March 5, 2018 hearing, Defendants seek reimbursement of only Mr. Hatfield's fees to maintain the reasonableness of Defendants' submission." (Doc. 81 at 1, n.1, citing Jarmusz aff., ¶ 6, wherein she states: "I attended the March 5, 2018 sanction hearing."). Plaintiff's counsel construes defendants' representation to mean that defendants do not seek reimbursement for any of the hours Ms. Jarmusz spent on this matter, not just the hours she devoted to attending the hearing. (Doc. 99 at 3). It is apparent that counsel have misconstrued the meaning of defendants' representation and that defendants have opted to exclude from their request only the hours that Ms. Jarmusz spent attending the sanctions hearing. When defendants' statement is read in the context of their entire submission, it is clear defendants seek reimbursement for the remaining fees attributable to Ms. Jarmusz's work on the sanctions issue. Defendants have included in their documentation time entries and corresponding fees for Ms. Jarmusz's work, which does not include an entry for her attendance at the hearing. (Doc. 81, Exh. A). The amount of fees they request as reimbursement totals $16,746.50, which includes fees in the amount of $7,018.00 for work she performed, plus $9,728.50 billed by Mr. Hatfield. (Doc. 81 at 1-2; Exh. A; Exh. D, Jarmusz aff., ¶¶ 5, 6, 7; Exh. B, Downey aff., ¶¶ 6, 7). Defendants are entitled to reimbursement for fees attributable to Ms. Jarmusz's work so long as defendants would not have incurred the fees but for the failure of plaintiff's counsel to comply with the July 31, 2017 Order.

Plaintiff's counsel next allege that defendants are not entitled to reimbursement for fees incurred prior to December 14, 2017, when sanctions were first mentioned in the time records submitted by defendants. (Doc. 99 at 3). Defendants have submitted time records that include

entries dated July 3, 2017 to April 3, 2018 and one mileage expense entry. (Doc. 81, Exh. A).

Several entries predate the July 31, 2017 Order or relate to work performed on the date of the

Order, and there is no indication that these fees relate to plaintiff's counsel's compliance with the

Order. These entries, which total $5,997.50, reflect work performed on the following dates and

billed at the listed rates[2]:

- 07/03/2017 FDH Draft correspondence to plaintiff's counsel regarding her     $66.00
  expert's site visit, inspection and testing
- 07/03/17 Review plaintiff's request to perform inspection and testing at Brown   $99.00
  County Jail
- 07/11/2017 AMJ Edit defendants' response to plaintiff's Fed. R. Civ. P. 34     $56.00
  requests
- 07/13/2017 FDH Finalize response to plaintiff's request to conduct a site visit   $115.50
  and draft correspondence to plaintiff's counsel regarding same
- 07/14/2017 AMJ Discuss occurrences with opposing counsel, court's request     $70.00
  and desired response
- 07/14/2017 FDH Review Attorney Helbling's voicemail and telephone     $99.00
  conference with plaintiff's counsel regarding disputes relative to plaintiff's
  requested site visit
- 07/14/2017 FDH Draft email correspondence to Attorney Maraan regarding     $49.50
  court's order requiring the parties to submit a joint summary
  of disputed issues regarding plaintiff's requested site visit
- 07/17/2017 AMJ Draft defendants' response to plaintiff's Rule 34 request     $644.00
- 07/17/2017 AMJ Assemble exhibits A-P to defendants' response to     $140.00
  plaintiff's Rule 34 request
- 07/17/2017 FDH Revise, edit and finalize parties' joint statement as to     $148.50
  disputed matters relative to plaintiff's request and draft email
  correspondence to plaintiff's counsel regarding same
- 07/18/2017 AMJ Develop joint statement of discovery dispute     $280.00
- 07/18/2017 FDH Revise, finalize, and email joint summation to court     $214.50
- 07/18/2017 FDH Review plaintiff's summation of disputes regarding     $478.50
  plaintiff's requested site visit and prepare counterarguments in preparation
  for conference with the court
- 07/19/2017 FDH Telephone conference with the court and opposing     $198.00
  counsel regarding plaintiff's site visit, inspection and testing
- 07/20/2017 FDH Conduct research regarding parameters of minimally     $313.50
  destructive testing in preparation to respond to plaintiff's amended
  request to enter and inspect Brown County Jail
- 07/21/2017 AMJ Evaluate plaintiff's revised Rule 34 request     $28.00
- 07/21/2017 FDH Draft email correspondence to plaintiff's counsel regarding     $66.00

---

[2] "FDH" are Mr. Hatfield's initials and "AMJ" are Ms. Jarmusz's initials.

past due amended request to enter and inspect and review response

- 07/21/2017 FDH Review plaintiff's amended request to enter and inspect and review response — $214.50
- 07/23/2017 AMJ Develop and revise defendants' response to plaintiff's amended request — $308.00
- 07/23/2017 FDH Draft response to plaintiff's amended request to enter and inspect Brown County Jail — $1,039.50
- 07/23/2017 FDH Conduct research pertaining to proposed testing under Rule 34 that has been ruled to be burdensome, prejudicial and unsafe — $231.00
- 07/24/2017 FDH Second telephone conference with the court and opposing counsel regarding plaintiff's site visit, inspection and testing — $264.00
- 07/26/2017 FDH Telephone conference with the court and opposing counsel regarding ongoing discovery disputes — $181.50
- 07/26/2017 FDH Telephone conference with plaintiff's counsel attempting to resolve discovery disputes prior to court intervention — $66.00
- 07/27/2017 FDH Review discovery order regarding plaintiff's expert site visit and case schedule — $33.00
- 07/30/2017 FDH Conduct research regarding improperly issued subpoenas and draft correspondence to the Court opposing plaintiff's request to modify the Order regarding plaintiff's expert site visit — $478.50
- 07/31/2017 FDH Review modified discovery order — $49.50
- 07/31/2017 FDH Telephone conference with defendants' mechanical engineer expert, John Weichel, regarding plaintiff's site visit — $66.00

(Doc. 81, Exh. A, pp. 1-9).

There is no evidence of a causal link between the fees incurred with respect to these tasks and plaintiff's counsel's subsequent failure to comply with the Court's July 31, 2017 Order. In other words, counsel's failure to comply with the Order, which occurred after the dates of these entries, did not cause defendants to incur the above attorney fees. Defendants would have incurred these fees regardless of whether plaintiff's counsel complied with the Order. Thus, the Court cannot award attorney fees for work documented in the entries that was performed prior to the July 31, 2017 Order or on the date of the Order. *See Haeger,* 137 S. Ct. at 1186 ("the court can shift only those attorney's fees incurred because of the misconduct at issue."). The same holds true for the October 18, 2017 entry totaling $49.50 for drafting email correspondence to plaintiff's counsel regarding return of the sprinkler head and unspecified discovery matters.

(Doc. 81, Exh. A, p. 12). There is no basis for finding that the work documented in the entry would not have been necessary had plaintiff's counsel complied with the July 31, 2017 Order.

Thus, the Court will deduct $6,047.50 ($5,997.50 plus $49.50) from the requested fees. It appears that defendants would have incurred these attorney fees even if plaintiff's counsel had complied with the July 31, 2017 discovery Order. This leaves a total of $10,699.00 in reimbursable fees ($16,746.50 less $6,047.50).

The time entries dated December 13, 2017 to April 3, 2018 reflect work by counsel that would not have been necessary had plaintiff's counsel complied with the July 31, 2017 Order, with one exception. (Doc. 81, Exh. A, pp. 15-40). The time entry dated March 8, 2018 reflects 2.30 hours which Mr. Hatfield spent drafting, editing and finalizing a summary of the sanctions hearing, which is reimbursable, and drafting email correspondence to "Jeff Knapp," which is not. (Doc. 81, Exh. A, p. 32). Mr. Knapp is not identified in the exhibit and defendants have not explained what role he played in the litigation. It is therefore appropriate to deduct some portion of the fee to account for the time spent drafting the email to Mr. Knapp. The Court will deduct .80 hours for this task and $140.00 from the requested fee. The remaining 1.5 hours is a reasonable amount of time to prepare a summary of the sanctions hearing. Defendants are entitled to be reimbursed $262.50 for this task. The total of reimbursable fees remaining is $10,559.00 ($10,699.00 less $140.00).

The entries from December 13, 2017 forward relate to fees attributable to alteration of the shower head assembly, preparation and presentation of the sanctions motion, and documentation of defense counsel's fees and expenses. (Doc. 81, Exh. A, pp. 15-40). Plaintiff's counsel asks the Court to deduct $52.50 from the fees to account for a .30-hour telephone conference between Mr. Hatfield and defendants' expert on March 26, 2018, regarding fees relative to plaintiff's

destructive testing. (*Id.*, p. 36). Plaintiff's counsel notes that the conference occurred four days after the Court had granted the motion for sanctions. (Doc. 99 at 4). While this is true, the conference nonetheless took place before defendants had filed their statement of expenses and attorney fees on April 5, 2018. (Doc. 81). The timing of the conference therefore does not indicate that it was unrelated to the sanctions issue. The Court declines to deduct this amount from the requested fees.

The remaining attorney fees incurred on and after December 13, 2017 are reimbursable. These fees total $10,559.00. The fees are reasonable attorney fees that defendants would not have incurred but for the failure of plaintiff's counsel to comply with the July 31, 2017 Order. Defendants are entitled to recover these attorney fees. *See Haeger*, 137 S. Ct. at 1182. Defendants are also entitled to recover $135.16 in expenses for Mr. Hatfield's round-trip travel from Columbus to Cincinnati for the sanctions hearing. (Doc. 81, Exh. A, p. 38). The total in attorney fees and expenses defendants have documented they incurred as a result of plaintiff's counsel's failure to comply with the July 31, 2017 Order is $10,694.16.

**IT IS THEREFORE ORDERED THAT:**

Defendants are awarded sanctions against plaintiff's counsel in the amount of **$10,694.16** for reasonable attorney fees and expenses defendants incurred as a result of the failure of plaintiff's counsel to comply with the Court's July 31, 2017 Order.

Date: _8/27/18_

Karen L. Litkovitz
United States Magistrate Judge